STATE ex rel. T. D. PROCTOR, T. P. RENFROE, ALBERT H. MILLER, JOHN CREWS and J. R. DOWLING, as and Constituting the BOARD OF BOND TRUSTEES OF UNION COUNTY, v. FRED P. CONE, J. M. LEE and W. V. KNOTT, as and Constituting the STATE BOARD OF ADMINISTRATION, et al.

193 So. 753
En Banc
Opinion Filed January 16, 1940
Rehearing Denied February 27, 1940

*Keen & Allen, J. Velma Keen, Wm. P. Allen* and *A. Frank O'Kelley, Jr.,* for Relator;

*George Couper Gibbs,* Attorney General, *J. Compton French,* Assistant Attorney General, *Hal Y. Maines* and *Robert J. Pleus,* for Respondent;

*Henderson & Franklin, J. McHenry Jones, R. H. Meritt, J. Henry Blount* and *John E. Mathews,* as *Amici Curiae.*

TERRELL, C. J.—On relation of the Board of Bond Trustees of Union County, alternative writ of mandamus was issued from this Court directed to the Board of Administration of the State of Florida and the Board of County Commissioners of the latter county commanding the former to pay relators certain funds held by them to the credit of Union County or show cause on a day certain why they refuse to do so. We are at this time confronted with a motion to quash the alternative writ.

The alternative writ was prayed for on the theory that

the funds sought to be recovered constitute a "surplus" as contemplated by Section 14 of Chapter 14486, Acts of 1929, as amended by Chapter 15891, Acts of 1933, as further amended by Chapter 19279, Acts of 1939. The motion to quash is grounded on the theory that Union County is conducting its fiscal policy under the provisions of Chapter 15891, Acts of 1933, better known as the Kanner Act, that pursuant to said Act, the funds sought to be recovered may be used for the purpose of outstanding bonds as therein provided and being so, they are not available to be distributed as a "surplus" as contemplated by amended Section Fourteen of Chapter 14486, Acts of 1929.

In this State of the pleadings, the first question posed is whether or not the provisions of Chapter 15891, Acts of 1933, are now available to Union County and if so, would the Board of County Commissioners or the Board of Bond Trustees adopt the required resolution and take such other steps as the law requires to make the provisions of said Act available.

Chapter 15891, Acts of 1933, authorizes and directs the Board of Administration when requested by resolution of the Board of County Commissioners to use any and all moneys derived from gasoline taxes and credited to the account of such county or road and bridge district for the purpose of purchasing below par any bonds to which such moneys would be applicable. The Board of Bond Trustees of Union County was created by Chapter 11259, Acts of 1925, and is by the terms of said Act trustee for all bonds issued by Union County or any road district therein for all moneys collected by Union County for road and bridge purposes. The said Act provides that the board of bond trustees shall have entire control, supervision, care, construction, and maintenance of all roads and bridges in the

county. It would therefore appear that the board of bond trustees succeeds the board of county commissioners for all road and bridge purposes.

Chapter 15891, Acts of 1933, was not repealed by any amendment of Chapter 14486, Acts of 1929. It was in express terms re-enacted in Chapter 19279, Acts of 1939; and being so, its provisions are still available to Union County but in view of the provisions of Chapter 11259, Acts of 1925, creating the Board of Bond Trustees for said county and vesting it with the powers enumerated herein, the steps essential to take advantage of said Act should be initiated by the latter board. Counties whose bonds have a market value of par or better are of course not interested in or affected by the provisions of Chapter 15891, Acts of 1933. Any funds in the hands of the board of administration above debt service requirements derived from gasoline taxes and credited to Union County may by resolution of its board of bond trustees be used by the board of administration to purchase its outstanding bonds as Chapter 15891 provides, provided its bonds are not bringing par or better.

The next question with which we are concerned may be stated as follows: What is a "surplus" as contemplated by Section 14 of Chapter 14486, Acts of 1929, as amended by Chapter 15891, Acts of 1933, as further amended by Chapter 19279, Acts of 1939, and do the funds which Union County seeks· to recover in this litigation constitute such a surplus?

The answer to this question involves a rather long range consideration of the text and purpose of each Act heretofore enumerated. Chapter 14486, Acts of 1929, created the State Board of Administration and defined its powers. It was made the fiscal agent of the counties of the State, was

vested with certain funds of the counties with which it was directed to pay certain indebtednesses incurred by them, and to use the "surplus" in any county for the construction and maintenance of roads and bridges.

Section 13 of said Act requires the State Treasurer as county treasurer ex-officio, to keep a separate account for each county of all moneys received by him for the credit thereof from the following sources: (a) Any tax upon gasoline and other like products of petroleum applicable to the bonds of such county and of any special road and bridge district therein, and (b), any personal property tax on motor vehicles similarly applicable. These provisions were reenacted and amplified in Chapter 15891, Acts of 1933, and Chapter 19279, Acts of 1939.

The funds paid into the hands of the State Board of Administration were derived from Chapter 14575, Acts of 1929, which was amended by Chapter 15659, Acts of 1931, Section 3 of which provided for a "First Gas Tax" and a "Second Gas Tax." It further provided that the first gas tax should be paid into the State Road License Fund and that the second gas tax should be paid into the State Roads Distribution Fund, both of which funds were created by the latter Act and from which all moneys from paragraph (a) above are derived.

All moneys paid into these funds are required by the Board of Administration under the Act creating them to be kept in separate accounts for each county and each road and bridge district for the payment of principal and interest on their bonds and they are sometimes designated as their sinking fund account.

Section 14 of Chapter 14486, requires the Board of Administration before June 1st of each year to estimate the amount of money available for the next fiscal year for each

of the accounts described in paragraphs (a) and (b) herein. Any funds in the sinking fund accounts shall first be used for interest, principal, or sinking funds of outstanding bonds so far as necessary but if these should not be sufficient for that purpose, any funds in paragraphs (a) and (b) herein may then be applied for that purpose. In so applying these funds to the credit of each county or road and bridge district, there shall be apportioned to such county or road district the proportion of the moneys the amount of the participating bonds of each subdivision bears to the aggregate amount of the participating bonds to which the accounts are applicable. Any surplus in any county accounts, except sinking fund accounts after such application, shall be remitted to the county for the use of which such county account was created and shall be used by said county solely for the construction and maintenance of roads therein.

The word "surplus" as used in the sentence preceding this is the first time that it appears in any of the legislative acts named, all of which must be considered to answer the question before us. Chapter 15891, Acts of 1933, also affected this "surplus" in the manner stated in answer to question one but its application was specifically directed in Chapter 19279, Acts of 1939, wherein it was provided that 20 per cent of it should be remitted to the county and by it used only for the construction and maintenance of roads and bridges therein and 80 per cent should be remitted to the State Road Department to be used by it in the counties entitled to such credit in the construction of any State road before the time designated in such counties or for such other purposes as said Act designates.

From what has been said, it follows that the Board of Administration was created solely for the purpose of administering funds allocated to the counties from the sources

stated in this opinion; that is to say, from gas taxes or other sources provided by law. It further appears that the counties had constructed many miles of road taken over by the State and designated as State roads and that the primary purpose of the second gas tax was to make restitution by the State to the counties for the construction of these roads. Each of the Acts enumerated herein was a component part of the State's scheme to effectuate this purpose and an examination of the history of this legislation shows conclusively that no "surplus" was contemplated until this purpose was accomplished.

The words "surplus" and "sinking fund" as used in these Acts have no other than ordinary meaning. "Surplus" has reference in general to a certain portion of the second gas tax and may not include any portion of the ad valorem taxes. It may be that the sinking fund for interest and retirement of term bonds should be administered somewhat differently from that for interest and retirement of serial bonds.

Section 8 of Chapter 15659, Acts of 1931, provides in detail how the second gas tax shall be distributed among the counties and it is required that such distribution continue until the counties are fully compensated for the amounts they have spent on State roads. Some very disastrous results have been called to our attention for failure to observe this rule.

We are not unmindful of the fact that any rule prescribed will work a hardship in individual cases but considering the purpose that pervades the legislation affecting the question, we cannot escape the conclusion that no county can have a "surplus" from gas tax funds so long as roads constructed by it and taken over by the State as State roads are unpaid for or any bonds thereon are outstanding. None

of the Acts dealing with the "surplus" contemplate that it occur until this application is made.

If any of such bonds have not yet matured or cannot be acquired and a sinking fund ample to pay principal and interest thereon when and as due has been provided and invested in liquid securities approved by the State Board of Administration, or as the law directs, then such bonds will be considered as having been taken care of and when done a "surplus" as contemplated by the Acts under review may accrue.

Having reached this conclusion, it follows that no "surplus" is shown by the record to be available to Union County so the motion to quash is granted.

It is so ordered.

WHITFIELD, BUFORD, CHAPMAN and THOMAS, J. J., concur.

BROWN, J., dissents.